## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHRAVAN KUMAR KONDAPALLY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>Defendants. | Civil Action No. 20-920 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff Shravan Kumar Kondapally seeks review of a decision by the U.S. Citizenship and Immigration Services ("USCIS") revoking, some thirteen years after its approval, the petition granting him an immigrant work visa, due to deficiencies in the petition found long after the fact. According to plaintiff, USCIS lacked authority to take this action because a "job portability" provision of the relevant statute, combined with a change in employer in the intervening span of years, served to immunize the petition from discretionary revocation by USCIS. Before the Court now are cross-motions for summary judgment on the two remaining live claims in this case. *See* Pl.'s Mot. Summ. J., ECF No. 21; Defs.' Cross-Mot. Summ. J., ECF No. 24. Upon consideration of the parties' briefing, plaintiff's motion is **DENIED,** and defendants' motion is **GRANTED** for the reasons set forth below.

## I.       BACKGROUND

### A.       Statutory and Regulatory Background

The Immigration and Nationality Act ("INA") creates a three-step process for noncitizens to obtain permanent employment in the United States in certain professional or skilled occupations. First, the employer applies for a labor certification from the U.S. Department of

Labor confirming that "there are not sufficient workers who are able, willing, qualified . . . and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor," and "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed."  8 U.S.C. § 1182(a)(5)(A)(i)(I), (II).  Second, once the Department of Labor grants certification, the employer submits the certification with an Immigrant Petition for Alien Worker (Form I-140) to USCIS on behalf of the noncitizen worker, known as the "beneficiary" of the petition.  8 C.F.R. § 204.5(a), (*l*)(1); *see also* 8 U.S.C. § 1153(b)(3)(C).  Along with its I-140 petition, the employer must submit additional documentation, including "letters from trainers or employers" demonstrating that the beneficiary has satisfied "[a]ny requirements of training or experience" or other requirements set forth in the labor certification, 8 C.F.R. § 204.5(*l*)(3)(ii)(A), and "evidence that the prospective . . . employer has the ability to pay the proffered wage . . . until the beneficiary obtains lawful permanent residence," *id.* § 204.5(g)(2).  Even if USCIS approves the I-140 petition, however, "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under [8 U.S.C. § 1154]."  8 U.S.C. § 1155.  Section 1154, in turn, directs the Attorney General to approve certain immigration petitions, including Form I-140 petitions, "if he determines that the facts stated in the petition are true and that the alien . . . is eligible for [employment-based] preference."  *Id.* § 1154(b).  Thus, I-140 petitions approved by USCIS and the Attorney General may nonetheless be revoked under § 1155.

Upon USCIS's approval of the I-140 petition, the beneficiary may apply for lawful permanent resident status by submitting an Application to Register Permanent Residence or

Adjust Status (Form I-485). *See* 8 U.S.C. § 1255(a); 8 C.F.R. § 245.2(a)(3)(ii). USCIS cannot approve the I-485 application unless the underlying I-140 petition is approved. *See* 8 U.S.C. § 1255(a) (noting that a status adjustment may only be granted if "the alien is eligible to receive an immigrant visa"). Under USCIS regulations, a noncitizen worker seeking to become a lawful permanent resident must have a valid offer of employment when the I-485 is filed and adjudicated. 8 C.F.R. § 245.25(a).

To ensure "job flexibility for long delayed applicants for adjustment of status to permanent residence," in 2000, Congress added to the INA a portability provision. American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, § 106(c), 114 Stat. 1251, 1254 (codified at 8 U.S.C. § 1154(j)). Under the portability provision, if a beneficiary's I-485 application has been pending for 180 days or longer, the beneficiary's related I-140 petition "shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the [I-140] petition was filed." 8 U.S.C. § 1154(j). A noncitizen worker filing a standalone employment-based I-485 application with a pending or approved I-140 may be required to establish that the original offer of employment detailed in the I-140 is continuing or to confirm the existence of a new bona fide job offer under the portability provision. 8 C.F.R. § 245.25(a). This information is provided on Form I-485 Supplement J ("Supplement J"). *Id.*

During the pendency of the I-485 application, USCIS regulations allow the noncitizen worker to file an Application for Employment Authorization (Form I-765). 8 C.F.R. § 274a.12(c)(9). The approval of an I-765 application is committed to "the discretion of USCIS," *id.* § 274a.13(a)(1), though the process is mentioned nowhere in the INA. "[N]o appeal" is available to challenge the denial of an I-765 application. *Id.* § 274a.13(c). If the

application is granted, the noncitizen worker is issued a Form I-766 employment authorization document ("EAD"), which is valid for a "specific period" of time, *id.* § 274a.13(b), and ordinarily terminates at the end of that period, *id.* § 274a.14(a)(1)(i).  If the noncitizen worker submits an application to renew the EAD before its expiration, the validity period of the initial authorization is automatically extended for 180 days or until the renewal application is denied, whichever is earlier.  *See id.* § 274a.13(d)(1), (3).  USCIS may also revoke an EAD before its expiration date if the I-485 application on which it is based is denied.  *See id.* § 274a.14(b)(1)(i).

## B.    Factual Background

Plaintiff has resided in the United States since 1988, when he immigrated from India on a student visa.  Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."), Ex. A, Aff. of Shravan Kumar Kondapally ("Kondapally Aff.") ¶ 1, ECF No. 21-2.[1]  Since 1988, he has made two attempts to secure legal permanent resident status.

First, in 2000, plaintiff's then-employer, Baan USA Inc. ("Baan"), sponsored plaintiff for a Form I-140 petition and employment-based permanent residency.  The Department of Labor granted a labor certification, *see* Admin. Record ("AR") at 1115–21, ECF No. 29-29, and USCIS approved the I-140 petition in September 2000, *see id.* at 1111, ECF No. 29-28.[2]  Plaintiff subsequently filed, in May 2001, a Form I-485 application for permanent residency, *see id.* at 1026, ECF No. 29-26, but Baan laid him off about a month later, *see id.* at 201–03, ECF No. 29-10, and withdrew the I-140, *see id.* at 988, ECF No. 29-25; *id.* at 1106, ECF No. 29-27.  In

---

[1]    Although the Court has reviewed each exhibit and submission from the parties in support of and in opposition to the pending motions, only those exhibits necessary to provide context for resolution of the pending motions are cited herein.

[2]    In compliance with Local Civil Rule 7(n)(1), defendants submitted a certified list of the contents of the administrative record, *see* Certified List of Contents of Admin. Record, ECF No. 20, and the parties separately docketed the portions of the administrative record cited or otherwise relied upon in the parties' briefing, *see* Notice of Filing App'x to Admin. Record, ECF No. 29.

January 2005, USCIS denied plaintiff's I-485 application.  *Id.* at 990, ECF No. 29-25.  Nearly

thirteen years after Baan withdrew its I-140 petition, in April 2014, the USCIS Administrative

Appeals Office affirmed the denial of plaintiff's I-485 application because it had been pending

for less than 180 days when the I-140 petition was withdrawn.  *Id.* at 987–91; *see also* 8 U.S.C.

§ 1154(j).

### 1.   *I-140 Approval*

During the intervening decade, while his Baan–sponsored application languished,

plaintiff made a second attempt to become a legal permanent resident.  In 2006, plaintiff's new

employer, Arwano Inc. ("Arwano"), filed a Form I-140 on his behalf, AR at 766, ECF No. 29-

21, which USCIS approved in September 2006, *id.* at 80, ECF No. 29-4.  The I-140 indicated

that plaintiff was "[a] professional (at a minimum, possessing a bachelor's degree or a foreign

degree equivalent to a U.S. bachelor's degree) or a skilled worker (requiring at least two years of

specialized training or experience)."  *Id.* at 766, ECF No. 29-21.  In support of its petition,

Arwano informed USCIS that plaintiff was to be employed "as a Software Consultant," *id.* at

788, a role "requiring the skills of a professional with any combination of programs/education

from any institutions determined equivalent to a U.S. Bachelor's Degree in Computer Science,

Engineering (any), Math or related and 24 months of experience in the job offered or as a

Computer Software Professional," *id.* at 789.  Arwano was willing to "accept any suitable

combination of education, training or experience," and noted that the Department of Labor had

"classified this job opportunity . . . as 'professional.'"  *Id.*

The company contended that plaintiff had satisfied the requirement for education

"equivalent" to a B.S. in computer science through his acquisition of a Master of Science degree

from Jackson State University, *id.* at 777; *see also id.* at 795–800, and, though he lacked the

requisite 24 months of experience, "possess[ed] [an] alternate combination of education and experience" as well as sufficient "experience in an alternate occupation," *id.* at 777.  The petition indicated that plaintiff had worked for Arwano as a Software Consultant since September 2005, *id.*, and was previously employed by several firms as a Computer Software Professional over several periods dating back to April 1996, *id.* at 777–79, 782–84, including employment with Baan from January 1999 to June 2003, *id.* at 782, in addition to earlier work experience, *see id.* at 782–83.  As evidence of this experience, Arwano submitted a letter from SSA Global, a company that had "acquired" Baan in July 2003.  *Id.* at 806.  The letter stated that plaintiff "was a full time permanent employee at Baan. . . from 01/01/1999 to 06/08/2001" and listed his job title as "Technical Consultant."  *Id.*  To comply with the regulatory requirement that a petition "be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage," 8 C.F.R. § 204.5(g)(2), the application also included a 2005 federal income tax return for Arwano and plaintiff's pay stubs, *see* AR at 807–16, ECF No. 29-21.

USCIS approved the I-140 petition on September 14, 2006, *see id.* at 560, ECF No. 29-17, without requesting any additional evidence from plaintiff or Arwano before issuing its decision.  The approval notice indicated that it was issued pursuant to either 8 U.S.C. § 1153(b)(3)(A)(i) ("Skilled Worker") or 8 U.S.C. § 1153(b)(3)(A)(ii) ("Professional").  *See* AR at 560, ECF No. 29-17.

### 2.   *I-485 Application*

In August 2007, plaintiff filed a second I-485 application to become a lawful permanent resident.  *Id.* at 498–502, ECF No. 29-14.  This application remained pending until its denial by USCIS in March 2020.  *See id.* at 263–64, ECF No. 29-11.  Meanwhile, when USCIS affirmed

its denial of plaintiff's *first* I-485 application in 2014, the agency "noted," without any apparent objection, the 2006 approval of the Arwano I-140.  *Id.* at 989 n.1, ECF No. 29-25.

Plaintiff remained with Arwano until August 2016, when he began employment with Verizon Network Business Services ("Verizon").  AR at 590–91, ECF No. 29-18.  He did not advise USCIS of his change in employment or formally request job portability at that time.  *See* Pl.'s Mem. at 19, ECF No. 21-1.

### 3.   *I-140 Revocation*

About three years after plaintiff became employed by Verizon, USCIS issued, on July 1, 2019, a Notice of Intent to Revoke the Arwano I-140 petition.  AR at 633–41, ECF No. 29-20. In this notice, USCIS stated four grounds for revocation.  First, the agency determined that the Software Consultant position held by plaintiff at Arwano did not qualify as "professional," which classification requires "evidence showing that the minimum of a baccalaureate degree is required for entry into the occupation," 8 C.F.R. § 204.5(*l*)(3)(ii)(C).  Arwano's representation that it would accept any combination of programs and education equivalent to a Bachelor of Science degree, in USCIS's view, "allow[ed] for education less than a United States baccalaureate degree" and the position was therefore "not professional."  AR at 635.

Second, USCIS noted that Arwano had submitted only one letter, from SSA Global, showing plaintiff's experience and thus "the letter from [SSA Global] form[ed] the basis of [plaintiff's] eligibility."  *Id.* at 637.  USCIS determined, however, that "other documents submitted by [plaintiff] call[ed] into question the reliability and credibility of the letter."  *Id.* Inconsistencies led USCIS to conclude that the I-140 petition was not supported by "credible evidence" allowing USCIS to "determin[e] whether [plaintiff] possessed the experience listed on

the labor certification." *Id.* at 638.  As a result, the petition "did not establish that [plaintiff] met the minimum requirements" to be "considered 'qualified' for the position." *Id.*

Relatedly, USCIS concluded that "it appear[ed] that [plaintiff] misrepresented his experience" when completing the required forms.  *Id.* at 639.  In this regard, the agency noted that plaintiff had signed a section of the labor certification form declaring "under penalty of perjury" that the characterization of his work experience was "true and correct," *id.* at 640, yet stated, in tension with his later representations and USCIS records, that he worked for Baan until June 2003, not June 2001.  *Id.*  USCIS viewed this inconsistency as a willful "false representation" by plaintiff.  *Id.*  Since the only letter of experience supporting the I-140 petition was related to plaintiff's Baan employment, the misrepresentation was "material to whether [plaintiff] m[et] the required experience on the labor certification" and thus to whether the I-140 petition should have been approved.  *Id.*  Accordingly, USCIS "intend[ed] to enter a finding of willful misrepresentation of a material fact" and to "invalidate the labor certification."  *Id.*

Finally, USCIS determined that Arwano "did not establish that it ha[d] the ability to pay the proffered wage," as required by 8 C.F.R. § 204.5(g)(2), because the 2005 federal income tax return it submitted with the I-140 petition did not demonstrate Arwano's "ability to pay as of" the petition's filing in June 2006.  AR at 639, ECF No. 29-20.  Arwano was therefore required to submit "annual reports, federal tax returns, or audited financial statements," 8 C.F.R. § 204.5(g)(2), for the 2006 fiscal year, AR at 639.  Arwano was given thirty days to submit (1) "evidence" that plaintiff's position with Arwano "require[d] at least a United States baccalaureate degree or a foreign equivalent degree"; (2) "independent objective evidence to reconcile the inconsistencies" in plaintiff's dates of employment and job titles and to demonstrate that he had "24 months of experience a[s] a Computer Software Professional";

(3) "a full and complete copy of its 2006 annual report, federal tax return, or audited financial statement"; and (4) "preexisting and object[ive] documentary evidence to overcome [plaintiff's] willful misrepresentation of a material fact." *Id.* at 641.

A few weeks after the notice of intent to revoke was issued, in July 2019, Arwano responded, *see id.* at 642–754, even though by this time plaintiff had left the company. The response explained that the I-140 petition had characterized plaintiff's position as a skilled worker, rather than professional, obviating the need for a baccalaureate degree or equivalent, *id.* at 646–47, and that, in any event, plaintiff had an advanced degree in computer science and "experience as a computer software professional in excess of two years," *id.* at 647. As to the alleged misrepresentation of plaintiff's Baan employment, Arwano stated that the inconsistencies were "due to the various acceptable options to define entities when there is a successor-in-interest transaction, and simple typographical errors." *Id.* at 648. As to its ability to pay the proffered wage, Arwano submitted its 2006 federal tax return, showing net income in excess of plaintiff's salary. *Id.* at 651, 748–52. Soon after, on August 8, 2019, plaintiff filed Supplement J, requesting portability of his I-485 application to his new job with Verizon, under 8 U.S.C. § 1154(j) and 8 C.F.R. § 245.25, which USCIS denied. *Id.* at 588–95, ECF No. 29-18.

During the pendency of his I-485 application, plaintiff periodically applied for and received employment authorizations through I-765 petitions. With his most recent employment authorization scheduled to expire, plaintiff filed a new Form I-765 on November 7, 2019 seeking to renew his employment authorization, Pl.'s Mem., Ex. C, Declaration of James McLaughlin III, ECF No. 21-4, which triggered an automatic extension of his employment authorization until the earlier of September 1, 2020 or the denial of his renewal application, *see* 8 C.F.R. § 274a.13(d)(1), (3).

Several days later, on November 12, 2019, USCIS revoked its prior approval of the I-140 submitted by Arwano in 2006.  AR at 600–31, ECF No. 29-19.  The Notice of Revocation cited the same reasons for revocation given in the Notice of Intent to Revoke, and found the additional evidence submitted by Arwano insufficient to show that plaintiff had been hired as a skilled worker rather than a professional, *see id.* at 624–26, to reconcile the alleged inconsistencies in plaintiff's documentation, *see id.* at 626–29, and to show Arwano's ability to pay, *see id.* at 629–30.  As a result, USCIS found that the I-140 had not in fact qualified for approval when it was filed with the agency in 2006.  *Id.* at 601.  Plaintiff filed an administrative motion to reopen and reconsider the revocation of the petition on December 11, 2019, *id.* at 353–489, ECF No. 29-13, which was denied on April 17, 2020, *id.* at 335–48, ECF No. 29-12.  Plaintiff then filed an administrative appeal of the revocation on April 29, 2020, *id.* at 44–74, ECF No. 29-3, which is still pending.

### 4.    *I-485 Denial*

On March 10, 2020, in light of the I-140 revocation, USCIS denied plaintiff's I-485 application and Supplement J on the grounds that without a valid I-140 visa petition, plaintiff was no longer eligible for adjustment of status.  *Id.* at 263-64, ECF No. 29-11; *id.* at 584–87, ECF No. 29-18.  Plaintiff filed an administrative motion to reopen or reconsider the denial of the I-485 petition on April 8, 2020, *id.* at 255–73, which was denied on August 19, 2020, *id.* at 253–54.

### 5.    *I-765 Denial*

Soon after the denial of his I-485 application, in March 2020, plaintiff "request[ed] the adjudication of his . . . I-765 [a]pplication pursuant to . . . 8 C.F.R. § 274a.12(c)," Pl.'s Mem. at 21, which regulation allows USCIS "in its discretion" to "establish a specific validity period for

an employment authorization document, which may include any period when an administrative appeal or judicial review of an application or petition is pending," 8 C.F.R. § 274a.12(c).  In plaintiff's view, his pending motion to reopen and reconsider the revocation of the I-140 petition should have qualified his I-765 application for treatment under this regulation.  On April 28, 2020, USCIS denied plaintiff's I-765 application filed November 7, 2019 because he no longer had a pending I-485 petition, a prerequisite for work authorization.  AR at 1233, ECF No. 29-30. Plaintiff refiled his Form I-765 on May 8, 2020, noting ongoing administrative and judicial review.  AR at 3–4, 10–16, ECF No. 29-2.  On May 27, 2020, USCIS reopened plaintiff's I-485 application and Supplement J, *id.* at 240, ECF No. 29-10, but only weeks later, on June 11, 2020, issued a notice of intent to deny, *see id.* at 240–42, and issued a final denial on August 19, 2020, *see id.* at 253–54.  On that same day, USCIS also denied plaintiff's I-765 application.  *Id.* at 1–2.

### C.     Procedural Background

On April 7, 2020, plaintiff initiated this litigation challenging the denial of his Supplement J and the invalidation of the labor certification application submitted by Arwano. *See* Compl., ECF No. 1.  He filed an amended complaint on August 18, 2020, asserting new claims challenging the invalidation of the I-140 petition (Count I), Am. Compl. ¶¶ 118–37, ECF No. 14, and the denial of his November 7, 2019 I-765 application (Count V), *id.* at 34–35 ¶¶ 150–61,[3] as having violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*[4]  Concurrently with his amended complaint, plaintiff filed a motion for relief pending review, pursuant to 5 U.S.C. § 705, or, in the alternative, a preliminary injunction, requesting,

---

[3]     The numbering of paragraphs in plaintiff's amended complaint restarts from 150 at Count V. See Am. Compl. at 34. To avoid confusion, the Court cites to the page and paragraph number when referring to paragraphs in the amended complaint whose numbers are duplicated.

[4]     The parties agree that Counts II, III, IV, and VI of the Amended Complaint are moot.  *See* Pl.'s Mem. at 23 n.6, 41 n.9; Defs.' Opp'n at 4.  Accordingly, these claims are dismissed.

based on Count V of his amended complaint, that the Court delay the effective date of USCIS's April 28, 2020 denial of his November 7, 2019 I-765 application and deem the requested authorization approved during the pendency of this case, retroactive to May 26, 2020.  Pl.'s Mem. Supp. Mot. for Relief Pending Review Pursuant to 5 U.S.C. § 705 or in the Alternative a Prelim. Inj. Pursuant to Fed. R. Civ. P. 65, ECF No. 13-1.  The Court denied that motion on August 27, 2020.  *Kondapally v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-920 (BAH), 2020 WL 5061735, at *1, *6 (D.D.C. Aug. 27, 2020).

The parties subsequently filed and briefed cross-motions for summary judgment, and defendants compiled the administrative record, *see* Certified List of Contents of Admin. Record, ECF No. 20; Notice of Filing App'x to Admin. Record, ECF No. 29.  After the D.C. Circuit's decision in *iTech U.S., Inc. v. Renaud*, No. 20-5235, 2021 WL 3043302 (D.C. Cir. July 20, 2021), the Court ordered, *see* Min. Order (July 20, 2021), the parties to submit supplemental briefing addressing the impact of the Circuit holding that "courts lack jurisdiction to consider visa revocations made under section 1155," *iTech*, 2021 WL 3043302, at *7, on the pending cross-motions for summary judgment.  The parties completed supplemental briefing on July 26, 2021, and the pending motions are now ripe for resolution.

## II.   LEGAL STANDARD

### A.   Administrative Procedure Act

The APA provides for judicial review of any "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and "instructs a reviewing court to set aside agency action found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" *Cigar Ass'n of Am. v. FDA*, 964 F.3d 56, 61 (D.C. Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)).  This standard "'requires agencies to engage in reasoned decisionmaking,'

and . . . to reasonably explain to reviewing courts the bases for the actions they take and the conclusions they reach." *Brotherhood of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 115 (D.C. Cir. 2020) (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.* ("*Regents*"), 140 S. Ct. 1891, 1905 (2020)). Judicial review of agency action is limited to "'the grounds that the agency invoked when it took the action,'" *Regents*, 140 S. Ct. at 1907 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)), and the agency, too, "must defend its actions based on the reasons it gave when it acted," *id.* at 1909.

### B.    Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see also* Fed. R. Civ. P. 56(a). In APA cases such as this one, involving cross-motions for summary judgment, "the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001) (footnote omitted) (collecting cases). Thus, a court need not and ought not engage in fact finding, since "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996); *see also Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 171 (D.C. Cir. 2013) (noting, in an APA case, that "determining the facts is generally the agency's responsibility, not [the court's]"). Judicial review, when available, is typically limited to the administrative record, since "[i]t is black-letter administrative law that in an [APA] case, a

reviewing court should have before it neither more nor less information than did the agency when it made its decision."  *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (internal quotation marks and citation omitted).

## III.   DISCUSSION

Plaintiff contends that his I-140 petition was "unlawfully invalidated" and his I-765 application was unlawfully denied because "[t]he facts and evidence were improperly weighed" by USCIS "against materially erroneous standards of law."  Pl.'s Mem. at 23.  He seeks to have these agency actions set aside on the grounds that they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in violation of the APA.  Pl.'s Mem. at 23.  As the D.C. Circuit has recently made clear, however, a revocation decision, under 8 U.S.C. § 1155, for a petition approved, under 8 U.S.C. § 1154, is committed to the "unreviewable discretion" of the executive branch, *iTech*, 2021 WL 3043302, at *1, and courts consequently "lack jurisdiction to consider visa revocations made under section 1155," *id.* at *7.  Similarly, as previously found in denying plaintiff's motion for preliminary relief, "employment authorization for noncitizen workers is committed to the discretion of USCIS and therefore unreviewable under the APA."  *Kondapally*, 2020 WL 5061735, at *4.  As explained below, summary judgment as to the remaining Counts I and V of the Amended Complaint therefore must be granted for USCIS, and plaintiff's motion for summary judgment must be denied.

### A.   Revocation of I-140 Petition (Count I)

Count I of the Amended Complaint challenges USCIS's invalidation of the I-140 petition filed by Arwano on his behalf in 2006.  Am. Compl. ¶¶ 118–37.  Plaintiff contends that USCIS "erroneously denied [his] I-485 Supplement J and unlawfully invalidated his I-140 Petition" by

applying "the incorrect legal standard."  Pl.'s Mem. at 25.  Specifically, he argues that USCIS failed to account for language in the INA's portability provision stating that an I-140 petition pending for more than 180 days "shall remain valid."  8 U.S.C. § 1154(j).  The operative directive in this phrase, in plaintiff's view, "affected"—indeed, eliminated—defendants' authority, under *id.* § 1155, to revoke petitions for which the portability provision had been activated.  Pl.'s Mem. at 28; *see also id.* at 26–33; Pl.'s Reply Defs.' Opp'n Mot. Summ. J. & Opp'n Defs.' Cross-Mot. Summ. J. ("Pl.'s Opp'n") at 2–13, ECF No. 26.  *Cf.* 8 U.S.C. § 1155 (providing that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under [8 U.S.C. §] 1154"); *see also* 8 C.F.R. § 205.2(a) (allowing a USCIS officer to revoke the approval of an I-140 immigrant visa petition "when the necessity for the revocation comes to [their] attention").

Resolution of this claim therefore turns on two questions: (1) whether USCIS's exercise of § 1155 revocation authority is reviewable by this Court; and (2) whether USCIS is stripped of that revocation authority with respect to a previously approved petition that "remain[s] valid" by operation of § 1154(j).  The answer to both is no, and thus no judicial relief is available with respect to the I-140 revocation.

### 1.    *Revocation Actions Under § 1155 Are Unreviewable Under iTech*

The D.C. Circuit recently decided in *iTech* that § 1155 confers on USCIS unreviewable discretion to revoke immigrant visa petitions granted pursuant to § 1154.  *iTech*, 2021 WL 3043302, at *7.  The *iTech* Court reached this conclusion on facts similar to this case, albeit without a portability component.  In *iTech*, the sponsoring employer filed an I-140 petition on behalf of a noncitizen worker, accompanied by "evidence of its ability to pay the proffered wage and evidence that [the worker] had obtained a bachelor's degree," which petition was approved

by USCIS.  *Id.* at *2.  More than a year later, "USCIS issued a notice of intent to revoke the approved petition."  *Id.*  USCIS "grounded its revocation in the 'realization that [the] immigrant visa petition was approved in error' and identified 'inconsistencies in the record calling into question whether the beneficiary meets the educational requirements of the labor certification' and whether [the employer] 'continues to demonstrate the ability to pay the proffered wage.'" *Id.* (citation omitted) (first alteration in original).  The employer "provided additional documentation in response to the notice to revoke, but USCIS ultimately decided to revoke its approval of the I-140 petition on the basis that [the employer] misrepresented [the beneficiary's] degree-conferring institution and employment qualifications" and failed to "establish its ability to pay the proffered wage."  *Id.*

In considering the district court's jurisdiction to review USCIS's revocation decision, the Circuit reviewed the relationship between § 1155 and another INA provision providing, in relevant part, that "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  *iTech*, 2021 WL 3043302, at *3 (quoting 8 U.S.C. § 1252(a)(2)(B)).[5] Determining that revocation of an I-140 petition was a "decision or action" within the meaning of § 1252(a)(2)(B)(ii),  *iTech*, 2021 WL 3043302, at *3–5, *8, the Circuit concluded that "section 1252(a)(2)(B)(ii) precludes judicial review of all decisions the authority for which is specified under Title 8, Chapter 2, Subchapter II to be within the Secretary's discretion,"

---

[5]    "This subchapter" refers to Title 8, Chapter 12, Subchapter II ("Immigration") of the U.S. Code, and includes, as relevant here, sections 1154, 1155, and 1252.

including "the decision to revoke an I-140 immigrant visa petition under section 1155." *Id.* at *8.

The Circuit's holding in *iTech* controls the outcome here.  Plaintiff's employment-based I-140 petition was approved under § 1154 and subsequently revoked under § 1155, just as was the petition of the *iTech* beneficiary.  The conclusion that § 1252 precludes judicial review of such revocations thus deprives this Court of jurisdiction over Count I, rendering unnecessary further consideration of the parties' extensive arguments about defendants' substantive decisionmaking, treatment of evidence, or adequacy of reformation opportunities with respect to plaintiff's I-140 petition.  *See* Pl.'s Mem. at 28–30, 34–41; Defs.' Mem. Supp. Cross-Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Defs.' Opp'n") at 17–24, ECF No. 24-1; Pl.'s Opp'n at 13–22; Defs.' Reply Supp. Cross-Mot. Summ. J. ("Defs.' Reply") at 7–13, ECF No. 28.  In supplemental briefing requested by the Court after *iTech*, plaintiff essentially concedes the unreviewability of § 1155 revocation—as he must.  *See generally* Pl.'s Suppl. Br., ECF No. 30.

As a last resort, plaintiff next contends that the disputed action is not a § 1155 revocation at all.

## 2.   *Portability Does Not Strip the Secretary of Revocation Authority*

Plaintiff asserts that he "is not challenging a decision made under 8 U.S.C. § 1155.  Instead Plaintiff is challenging a decision made under 8 U.S.C. § 1154(j)."  Pl.'s Opp'n at 6; *see also* Pl.'s Suppl. Br. at 1.  In other words, plaintiff seeks to invoke the portability provision in § 1154(j) to preserve the validity of his I-140 petition, on grounds that the addition of § 1154(j) limited the scope of the unlimited revocation authority otherwise conferred by § 1155.  *See* Pl.'s Mem. at 26–32; Pl.'s Opp'n at 7–13.  While clever, this argument does not withstand scrutiny

17

nor alter the conclusion dictated by binding precedent that defendants' decision to revoke that petition is unreviewable by this Court.

As an initial matter, plaintiff's position is difficult to square with the statutory text. Plaintiff's eligibility for a chance to receive a visa stems from the employment-based preferences set forth in 8 U.S.C. § 1153(b)(3)(A).  Arwano's authorization to petition for that classification on plaintiff's behalf is set forth in 8 U.S.C. § 1154(a)(1)(F).  The agency's duty to investigate the petition and, if appropriate, grant approval arises from 8 U.S.C. § 1154(b).  Given the multiple subsections of § 1154 implicated by the I-140 process, by any reasonable reading, the Arwano I-140 was a "petition approved . . . under section 1154," a category of petitions over which § 1155 expressly gives the Secretary discretionary revocation authority.[6]  While § 1154(j) allows a petition to "remain valid with respect to new job" under certain conditions, an I-140 approved under § 1154(b) (thus subject to § 1155 revocation) on which the portability provision is subsequently invoked remains an I-140 approved under § 1154(b).[7]  Plaintiff offers no rebuttal to this basic logic.

The parties dispute the impact, if any, of § 1154(j) on § 1155 revocation authority with a focus on a Ninth Circuit case, *Herrera v. U.S. Citizenship & Immigration Services*, 571 F.3d 881 (9th Cir. 2009), which held that "the Portability Provision does not affect the agency's revocation

---

[6]     Section 1154(b) authorizes "the Attorney General" to "approve the petition," while § 1155 confers revocation authority on "[t]he Secretary of Homeland Security" with respect to "any petition approved by [the Secretary] under section 1154."  This seems to be a distinction without a difference.  In *iTech*, the Circuit quotes the language "approved by [the Secretary] under section 1154," 2021 WL 3043302, at *6, with an associated footnote acknowledging that § 1154 "directs the Attorney General" to approve I-140 petitions, *id.* at *6 n.5, but ultimately takes no issue with this apparent textual disconnect, allowing a revocation to proceed regardless, *id.* at *8.  *See also Las Ams. Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d. 1, 11 n.4 (D.D.C. 2020) (K.B. Jackson, J.) (discussing the transfer of most immigration enforcement functions from "the Attorney General" to the Secretary).

[7]     8 U.S.C. § 1154(j) provides, in pertinent part:  "A petition . . . for an individual whose application for adjustment of status pursuant to section 1255 of this title has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed."

18

authority," *id.* at 889.  *See* Pl.'s Mem. at 25–32; Defs. Opp'n at 8–15.  USCIS cited *Herrera* in

its letter denying plaintiff's Supplement J.  AR at 141, ECF No. 29-9.  Plaintiffs confront

*Herrera* head-on, arguing that the case was wrongly decided and an improper basis for

revocation.  Pl.'s Mem. at 25–26.  In *Herrera*, as here, USCIS revoked an I-140 after an

employee had changed jobs, citing defects in the *original* petition, 571 F.3d at 883–84, rejecting

the argument, as asserted by plaintiff here, that the "shall remain valid" language of § 1154(j)

stripped the agency of authority to revoke the I-140, *id.* at 886–87.  The court focused on the

qualifying language in § 1154(j) as applying to an I-140 "*with respect to [the] new job,*" viewing

a USCIS-revoked petition as never having been "valid" and thus not "remain[ing]" so in a new

job.  *Id.* at 887 (first alteration in original) (quoting 8 U.S.C. § 1154(j)).[8]  This approach is

entirely consistent with the "basic logic" discussed above.

   The distinction between two causes of I-140 revocation—agency reassessment of the

original petition or withdrawal by the sponsoring employer—bears directly on what "job

portability" is meant to accomplish.[9]  If an employee stops working for someone who once filed

an I-140 petition sponsoring the employee, withdrawal of that petition by a former employer is

unsurprising.  Section 1154(j) prevents a revocation prompted by the former employer's

---

[8]     Plaintiff further protests that *Herrera* "runs directly against" a decision issued in *Mawalla v. Chertoff*, 468 F. Supp. 2d 177 (D.D.C. 2007), Pl.'s Mem. at 32, but this is incorrect.  As defendants correctly explain, *Mawalla* "concerned a question about the retroactive effect of a *revocation based on a withdrawn petition*."  Defs.' Opp'n at 14–15 (emphasis added).  In *Mawalla*, the court held that an I-140 revoked because of withdrawal by the *employer* should, for the purposes of § 1154(j), not be deemed void *ab initio*.  *See Mawalla*, 468 F. Supp. 2d at 182-83.  Here, however, *defendants'* discretionary decision to revoke plaintiff's I-140 under § 1155 was based on a determination that the petition was never validly approved at the outset.  Contrary to plaintiff's reading, the protection offered by *Mawalla* to employees losing a former employer's sponsorship on account to a job change only undermines plaintiff's argument that defendants' position "transforms 8 U.S.C. § 1154(j) into a nullity." Pl.'s Opp'n at 7 (capitalization altered).

[9]     Plaintiff also cites repeatedly to certain agency memoranda discussing the implementation of § 1154(j) for essentially the same proposition as that found in *Mawalla*.  *See* Pl.'s Mem. at 26–27, 29–30 (identifying the "2003 Yates Memo," "2005 Yates Memo," and "2005 Aytes Memo"); Pl.'s Opp'n at 8–11.  The memoranda are inapposite for the same reason *Mawalla* is: by plaintiff's own description, the cited portions of the memoranda concern circumstances where an employer *withdraws* an I-140 petition.

withdrawal—a natural incident of a job change—from being fatal to an employee's long-pending I-485 application.  Revocation due to agency reassessment of the first employer's petition is a different matter entirely.  Plaintiff's strained reading fails to recognize this textual distinction and misunderstands the purpose of the statute.

### 3. *Reliance*

Finally, plaintiff appeals to a "reliance interest" of I-140 beneficiaries with long-pending I-485 applications, created by USCIS's approval of their I-140 petitions years ago and their reasonable expectations of eventual I-485 approval.  *See* Pl.'s Mem. at 8, 30–31; Pl.'s Opp'n at 20.  The troubling central facts of this case make plaintiff's point painfully obvious.  Defendants approved, in 2006, an I-140 petition filed by Arwano for plaintiff, Pl.'s Mem. at 18; Defs.' Opp'n at 3, and almost 13 years later and after plaintiff had built a life in this country, USCIS revoked that same I-140 due to purported deficiencies in the information provided in 2006— deficiencies unchallenged at the time—on which USCIS had based its approval, Pl.'s Mem. at 19–20; Defs.' Opp'n at 3.  In the intervening years, plaintiff and his family continued to thrive in the United States, Kondapally Aff. ¶ 15, presumably based at least in part on an understanding that the approved I-140 would provide continuing permission to live and work here.  USCIS's *sua sponte* reassessment of its own approval more than a decade after the fact is, at a minimum, disquieting and likely both alarming and distressing to the many long-term I-140 beneficiaries contributing productively to American society.

Unfortunately, this cannot change the result in this case.  First, if a reliance interest is cognizable here, that interest derives from the initial I-140 approval itself rather than from any understanding of the portability provision.  In this case, plaintiff worked for Arwano for nearly ten years and then for Verizon for nearly three years before he learned of defendants' intent to

20

revoke his I-140.  *See* Pl.'s Mem. at 18–19.  The common denominator on which plaintiff relied

during *all thirteen* of those years was not the operation of § 1154(j), but rather his reasonable

belief in the validity of USCIS's 2006 approval of the Arwano I-140.  Second, and more

importantly, no substantive dispute with a § 1155 revocation, no matter how compelling, can

overcome the D.C. Circuit's bar to reviewability set forth in *iTech*.

### B.        Denial of I-765 Application (Count V)

Count V of the Amended Complaint challenges the April 28, 2020 denial of plaintiff's

November 7, 2019 Form I-765 application for renewed employment authorization.  Am. Compl.

at 34–35 ¶¶ 150–61.  Plaintiff argues that this denial was arbitrary and capricious because

defendants failed to consider plaintiff's eligibility for continued employment authorization under

8 C.F.R. § 274a.12(c) while he seeks judicial and administrative review of the denial and

revocation of his immigration benefits.  Pl.'s Mem. at 41; Pl.'s Opp'n at 22.  Indeed, USCIS's

April 28, 2020 decision denying plaintiff's I-765 application makes no reference to the relevant

provision of 8 C.F.R. § 274a.12(c).  *See* AR at 1233, ECF No. 29-30.  This omission is the only

specific argument plaintiff advances to show that the denial of the I-765 application was arbitrary

and capricious, but, as previously found, "even if he proffered more detailed reasoning," his

claim would fail "because employment authorization for noncitizen workers is committed to the

discretion of USCIS and therefore unreviewable under the APA."  *Kondapally*, 2020 WL

5061735, at *4.

Plaintiff brings his challenge to the April 28, 2020 denial under the APA, which generally

allows a court to set aside a final agency action if it is "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Review under the

APA is not available, however, where "agency action is committed to agency discretion by law."

5 U.S.C. § 701(a)(2); *see also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2567 (2019);

*Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) ("Because the APA does not apply to

agency action committed to agency discretion by law, a plaintiff who challenges such an action

cannot state a claim under the APA.").  Agency action is committed to agency discretion by law

"where the relevant statute [or regulation] is drawn so that a court would have no meaningful

standard against which to judge the agency's exercise of discretion," *Dep't of Commerce*, 139 S.

Ct. at 2568 (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370

(2018)), and there is consequently no "law to apply," *Heckler v. Chaney*, 470 U.S. 821, 834

(1985); *see also Make the Road N.Y. v. Wolf*, 962 F.3d 612, 631 (D.C. Cir. 2020).

 To determine whether this narrow exception to reviewability, *see Make the Road*, 962

F.3d at 631, applies, courts conduct a "careful examination of the statute on which the claim of

agency illegality is based" to assess the scope of the discretion Congress has conferred on the

agency, *Webster v. Doe*, 486 U.S. 592, 600 (1988).  Aside from banning the "hir[ing] . . . for

employment in the United States an alien knowing the alien is an unauthorized alien," 8 U.S.C.

§ 1324a(a)(1)(A), and an oblique reference to aliens "authorized to be . . . employed . . . by this

chapter or by the Attorney General," *id.* § 1324a(h)(3), Congress has neither directly addressed

nor mandated the issuance of employment authorization documents to noncitizen workers.

Rather, employment authorization for aliens is "purely [a] creature[] of regulation."  *Perales v.*

*Casillas*, 903 F.2d 1043, 1048 (5th Cir. 1990).  Statutory law therefore does not provide a

standard to apply to plaintiff's challenge.

 Judicially manageable standards supporting review also "may be found in formal and

informal policy statements and regulations," *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634,

643 (D.C. Cir. 2020) (quoting *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003)), because

"[i]t is well settled that an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion," *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959)).  In this case, the underlying regulations do not set out any such standards.  As a noncitizen seeking work authorization during the pendency of an I-485 application, 8 C.F.R. § 274a.12(c)(9), plaintiff is a member of a class of noncitizen workers who "must apply for work authorization," *id.* § 274a.12(c).  Under the regulations, approval or denial of his application "is within the discretion of USCIS," 8 C.F.R. § 274a.13(a)(1), without any textual limitation on that discretion. The regulations do not enumerate any standards by which a court may assess the merits of a denial of an I-765 application.  *Cf. Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1398 (D.C. Cir. 1995) (finding judicially manageable standards in a statute stating that an agency "may excuse a failure to file . . . if it finds it to be in the interest of justice").

Further, the specific regulatory provision to which plaintiff points does not list any standards by which a court could measure the sufficiency of the validity period, and in fact expressly reserves such determinations for USCIS.  8 C.F.R. § 274a.12(c) (allowing for USCIS "*in its discretion*, [to] establish a specific validity period for an employment authorization document, which *may* include any period when an administrative appeal or judicial review of an application or petition is pending" (emphasis added)).  Consequently, courts have routinely held that approving or denying the I-765 application, establishing the length of the EAD period, and deciding whether to extend the EAD period to encompass the pendency of any review, are decisions committed to USCIS's discretion and outside the purview of judicial review.  *See, e.g., Guevara v. Holder*, 649 F.3d 1086, 1092 (9th Cir. 2011) ("[T]he authorization for . . . employment [under 8 C.F.R. § 274a.12(c)(9)] is not mandated."); *Suarez v. Cowan*, No. 1:19-cv-

124, 2019 WL 7494391, at *6-7 (S.D. Tex. Oct. 29, 2019), *report and recommendation adopted*, No. 1:19-cv-124, 2020 WL 80641 (S.D. Tex. Jan. 7, 2020) ("[Plaintiff] asserts that this Court can review the denial of her I-765 application, i.e. her employment authorization application, pursuant to the Administrative Procedure[] Act.  Despite her argument to the contrary, the APA bars review of this claim."); *Villafranca v. Cowan,* No. B-18-39, 2018 WL 8665002, at *9 (S.D. Tex. July 3, 2018), *report and recommendation adopted*, No. 1:18-cv-39, 2018 WL 8665000 (S.D. Tex. Aug. 16, 2018) ("USCIS has unfettered discretion to grant or deny EADs to aliens who have filed a petition to become a legal permanent resident."); *Rosario v. U.S. Citizenship & Immigr. Servs.*, No. C15-0813JLR, 2017 WL 3034447, at *2 (W.D. Wash. July 18, 2017) ("[T]he regulations have conferred discretion on USCIS to approve or deny EAD applications unless they are filed by an applicant for asylum."); *Kaddoura v. Gonzales*, No. C06-1402RSL, 2007 WL 1521218, at *5 (W.D. Wash. May 21, 2007) ("[T]his Court lacks authority to grant an order compelling USCIS to grant plaintiff an EAD valid . . . until he has exhausted administrative and judicial review of the denial of his . . . adjustment of status application because USCIS retains discretionary authority over issuance of EADs.").

Despite this consistent authority that approval or denial of applications for employment authorization is committed to USCIS's discretion, plaintiff nonetheless insists that judicial review is available because "the evidence reflects that no discretion was exercised" in denying his I-765 application, since that application "was denied only because his I-485 Application was denied."  Pl.'s Mem. at 42.  Perhaps true, but irrelevant.  The unreviewability of decisions "committed to agency discretion" does not turn on the particular rationale cited by the agency in the course of issuing its discretionary decision.  Rather, unreviewability results from "the nature of the administrative action at issue" and the absence of statutory or regulatory standards for

carrying out the action in question.  *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (quoting *Sec'y of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006)).  Thus, while USCIS may have determined that, as a matter of internal policy, I-765 applications as to which the underlying I-485 application is denied must also be denied, *that* policy determination was in the first instance an exercise of agency discretion, outside the scope of judicial review.[10]

Finally, plaintiff contends that, even if review pursuant to 5 U.S.C. § 706(2)(A) is unavailable, he may still seek relief under 5 U.S.C. § 706(2)(D), which requires a reviewing court to set aside agency action undertaken "without observance of procedure required by law."  Pl.'s Mem. at 43–44.  This argument misconstrues the boundaries of the limitation on review under the APA imposed by 5 U.S.C. § 701(a)(2).  The entire "chapter" of the APA governing judicial review of agency action "applies . . . except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."  5 U.S.C. § 701(a).  When either of these exceptions applies, judicial review under § 706 is unavailable, regardless of which subsection of § 706 a plaintiff invokes.  *See, e.g.*, *Dep't of Commerce*, 139 S. Ct. at 2568 (noting that "[r]eview is not available . . . 'to the extent that' . . . the agency action is 'committed to agency discretion by law'" (quoting 5 U.S.C. § 701(a)(2)));  *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 99 (D.C. Cir. 2021) (same).  The conclusion that issuance of employment

---

[10]       Plaintiff relies on *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41 (D.D.C. 2011), and *Mawalla v. Chertoff*, 468 F. Supp. 2d 177 (D.D.C. 2007), for the proposition that the denial of his I-765 presents a reviewable question of law rather than an unreviewable exercise of discretion.  *See* Pl.'s Mem. at 42.  Those cases, however, distinguish "a pure question of law" from an "exercise of discretion," noting that 8 U.S.C. § 1255 "bars only review of discretionary decisions" and permits judicial review of agency actions related to statutory eligibility for the immigration benefits outlined in § 1255.  *Ravulapalli*, 773 F. Supp. 3d at 51; *see also Mawalla*, 468 F. Supp. 2d at 181.  As to the statutory criteria to receive such benefits, § 1255 itself provides judicially manageable standards.  The employment authorization benefit plaintiff seeks, in contrast, is a creature of regulations that do not themselves impose any judicially manageable standards.  *See* 8 C.F.R. § 274a.12(c)(9).  Thus, even under the logic of *Ravulapalli* and *Mawalla*, denial of plaintiff's I-765 application is an unreviewable exercise of agency discretion.

authorization documents to noncitizen workers is committed to USCIS's discretion therefore forecloses judicial review, whether under 5 U.S.C. § 706(2)(A) or § 706(2)(D).

## IV.   CONCLUSION

For the foregoing reasons, both the revocation of plaintiff's I-140 petition and the denial of plaintiff's I-765 application for employment authorization are committed to the discretion of USCIS by law.  Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendants' cross-motion for summary judgment is **GRANTED**.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: August 16, 2021

_____
BERYL A. HOWELL
Chief Judge